**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marilyn Diane Harris, ) | No. CV 09-1676-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Pending before the Court is Defendant/Counter-claimant United States of America's (the "Government") Motion for Summary Judgment (Doc. 32). The Court now rules on the Motion.

**I.    BACKGROUND**

When deciding a motion for summary judgment, the Court normally construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). But because Plaintiff/Counter-defendant Marilyn Diane Harris ("Plaintiff") did not file a response to the Government's Motion for Summary Judgment and did not controvert the Government's accompanying Statement of Material Facts, the Court will deem the Government's Statement of Material Facts admitted. L.R.Civ.P. 56.1(b) & Fed.R.Civ.P. 56(e)(2); *see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 845 F.2d 1538, 1545 (9th Cir. 1988)("We hold that when a local rule . . . has been promulgated, it serves as adequate notice to nonmoving parties

1 that if a genuine issue exists for trial, they must identify that issue and support it with
2 evidentiary materials . . .."); *Szaley v. Pima County*, 371 Fed.Appx. 734, 735 (9th Cir.
3 2010)("The district court permissibly deemed Defendant's statement of facts to be true
4 because Plaintiff failed to comply with Local Rule 56.1(b).").

5 Plaintiff filed her "Complaint for Refund of Taxes; Interest; Penalties and Damages
6 Illegally Assessed and Collected by Internal Revenue Service" (Doc. 1) on August 13, 2009.
7 She seeks a refund of $3,722.78 and an abatement of $30,631 in federal employment taxes
8 assessed against her by the Internal Revenue Service (the "IRS"), as well as damages for
9 unlawful collection actions.

10 Plaintiff's daughter is Marla Harris-Jinks. In 1987, Ms. Harris-Jinks formed Variety
11 Enterprises, a Phoenix-based escort service. Variety Enterprises also had offices in Los
12 Angeles and San Francisco, California. Ms. Harris-Jinks owned and operated Variety
13 Enterprises until 1998, when she was convicted of tax evasion. Ms. Harris-Jinks was
14 sentenced to twelve months of incarceration and twelve months of supervised probation on
15 October 20, 1998. She began serving her sentence in January of 1999.

16 One month before she began serving her sentence, Ms. Harris-Jinks made
17 arrangements for her mother, Plaintiff, to oversee her escort business while she was in prison.
18 In December of 1998, Plaintiff met with Walter Moser, Ms. Harris-Jinks, Brian Jinks (Ms.
19 Harris-Jinks's husband), and Evelyn Budd in the offices of Budd Accounting & Tax
20 Services. They decided at the meeting that Variety Enterprises would operate under a new
21 name, MDH Enterprises, and to incorporate MDH Enterprises ("MDH").

22 On March 12, 1999, Plaintiff signed an employment contract with MDH that charged
23 her with overseeing all operations of the business. She earned a bi-weekly salary of $1,750
24 that was paid on a weekly basis by check. Plaintiff became the Secretary and Treasurer of
25 MDH, and served as Secretary and Treasurer from at least March of 1999 until the business
26 was dissolved in May of 2000.

27 In her capacity as Secretary and Treasurer, Plaintiff filled out all the necessary
28 paperwork to incorporate MDH, including executing and filing the Articles of Incorporation.

As Secretary and Treasurer, Plaintiff had unilateral managerial and supervisory duties for MDH, including the authority to hire and fire employees, procure supplies, and pay bills.

Plaintiff was in charge of delivering MDH's books, payroll, and contracts to Budd Accounting. She met regularly with Evelyn Budd to collect payroll and business records. Plaintiff also served as the main liaison between Budd Accounting and Ms. Harris-Jinks.

Plaintiff opened a bank account at Valley Bank for MDH. As Secretary and Treasurer of MDH, she was an authorized signatory on MDH's accounts at Valley Bank and Bank of America. One of the corporate resolutions Plaintiff signed on behalf of MDH authorized her to endorse all checks relating to MDH.

In her capacity as Secretary and Treasurer of MDH, Plaintiff executed and filed MDH's Amended Profit Certificate of Disclosure with the Arizona Corporation Commission Corporations Division. Plaintiff had sole responsibility for providing MDH employees with tax withholding forms and forwarding relevant forms and payroll data to Budd Accounting in order to ensure the timely filing of federal tax deposits.

At some point between January and September of 1999, Plaintiff admitted to learning that employment taxes were not being paid. She testified that she "knew the taxes weren't taken care of, but that wasn't my problem." (Depo. of Marilyn Diane Harris, Doc. 32-9, 51:19-20.) Instead of paying MDH's federal employment taxes, Plaintiff signed checks to MDH's creditors, made payments toward MDH's outstanding loans, and paid employees' wages.

Through April of 2000, even after Ms. Harris-Jinks was released from prison, Plaintiff continued to sign checks on behalf of MDH. Plaintiff took no steps to remove herself or diminish her authority at the company after Ms. Harris-Jinks's release. And, despite knowing of MDH's tax debt, Plaintiff did nothing to rectify the situation. MDH ceased operations in May of 2000.

MDH's employment taxes for the tax periods ending September 30, 1999, December 31, 1999, March 31, 2000, and June 30, 2000 remain unpaid. On March 11, 2002, the IRS made an assessment for a trust fund recovery penalty against Plaintiff in the amount of

1  $30,630.91 pursuant to 26 U.S.C. §6672 for those tax periods.  As of December 31, 2010,
2  with accrued interest, the total balance owed by Plaintiff for MDH taxes was $43,197.39.

3       Plaintiff filed her Complaint on August 13, 2009.  (Doc. 1.)  She seeks a refund of
4  money paid, an abatement of any further taxes the IRS claims she owes, and damages
5  pursuant to 26 U.S.C. §7433(d).  The Government answered and filed a counter-claim on
6  January 7, 2010 (Doc. 15.)  In its counter-claim brought under 26 U.S.C. §7401, the
7  Government seeks to reduce to judgment the outstanding tax assessments made against
8  Plaintiff pursuant to 26 U.S.C. §6672, plus interest until she makes payment in full.

9       The Government propounded requests for admissions, requests for production, and
10 interrogatories on Plaintiff on March 2, 2010.  Plaintiff did not timely respond to the requests
11 for admission and interrogatories, so the Government wrote her a letter notifying her that the
12 matters in the requests for admission were deemed admitted and requesting Plaintiff's
13 interrogatory responses by a date certain.  Plaintiff served her responses to the interrogatories
14 on April 21, 2010, but never responded to the Government's requests for admission.  Nor did
15 Plaintiff ever ask the Court to have the admissions withdrawn.

16      Federal Rule of Civil Procedure 36 governs requests for admissions.  Pursuant to that
17 Rule, "A matter is admitted unless, within 30 days after being served [with a request for
18 admission], the party to whom the request is directed serves on the requesting party a written
19 answer or objection addressed to the matter and signed by the party or its attorney."
20 Fed.R.Civ.P. 36(a)(3).  A matter deemed admitted under section Rule 36(a)(3) is
21 conclusively established unless the Court, pursuant to a motion, permits the withdrawal or
22 amendment of the admission.  Fed.R.Civ.P. 36(b).

23      Because Plaintiff did not respond to the Government's requests for admission and
24 never moved to withdraw the deemed admissions, the Court treats the following as
25 conclusively established in this case:

26 •    Despite proper notice and demand for assessed trust fund recovery penalties in the
27      amount of $30,630.91, Plaintiff never made full payment of the assessed amount.
28 •    Plaintiff still owes $25,621.07 plus accrued statutory interest and additions from the

- 4 -

1     date of assessment, less any payments or credits.

2 • During the periods at issue in this case, Plaintiff had a duty to collect, account, and
3     pay over the federal income and social security taxes from the wages of the
4     employees of MDH, as required by 26 U.S.C. §§3102(a), 3402(a).

5 • During the periods at issue in this case, Plaintiff willfully failed to collect the federal
6     income and social security taxes from the wages of the employees of MDH, as
7     required by 26 U.S.C. §§3102(a), 3402(a), or willfully attempted in any manner to
8     evade or defeat such tax.

9 • Plaintiff had the actual or apparent authority to sign checks on the Valley Bank of
10     Arizona bank account held by MDH during the relevant time periods.

11 (Doc. 32-11, First Requests for Admissions, pp. 2-5.)

12     The Government moved for summary judgment on Plaintiff's claims and on its
13 counter-claim on October 29, 2010. (Doc. 32.) The Government also moved to dismiss
14 Plaintiff's claims for damages for lack of subject matter jurisdiction. (Id.) Plaintiff never
15 responded to the Motion. Because Plaintiff did not file a response to the Government's
16 Motion and did not controvert the Government's accompanying Statement of Material Facts
17 ("SOF"), the Court deems the Government's Statement of Material Facts admitted.
18 L.R.Civ.P. 56.1(b) & Fed.R.Civ.P. 56(e)(2).

19 **II.    MOTION TO DISMISS**

20     The Court will resolve the dismissal portion of the Government's Motion before it
21 reaches the summary judgment portion. The Government argues that the Court should
22 dismiss the Plaintiff's 26 U.S.C. §7433 claim for damages for lack of subject matter
23 jurisdiction.

24     For the Court to have subject matter jurisdiction over a case against the United States,
25 the United States must have expressly waived sovereign immunity and there must be
26 statutory authority vesting a district court with subject matter jurisdiction. *Alvarado v. Table*
27 *Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007). The party suing the United States
28 has the burden of demonstrating waiver of sovereign immunity. *Dunn & Black P.S. v. United*

- 5 -

1 *States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

2 　　　The United States has waived its sovereign immunity to a limited extent for
3 unauthorized tax collection claims. 26 U.S.C. §7433. But this waiver applies only if the
4 plaintiff "has exhausted the administrative remedies available to such plaintiff within the
5 Internal Revenue Service." 26 U.S.C. §7433(d)(1).

6 　　　Plaintiff has introduced no evidence that she pursued her §7433 claim for damages
7 with the IRS before filing suit. She produced nothing in response to the Government's
8 request for production regarding any §7433 administrative claims that she filed with the IRS.
9 When asked at her deposition whether she had filed an administrative claim for damages
10 under §7433, she responded, "I do not know." (Doc. 32-9; 15:19-25.) Plaintiff therefore has
11 not met her burden of proving that the United States waived its sovereign immunity for her
12 §7433 claim. Because Plaintiff has not met her burden, the Court will dismiss her §7433
13 damages claim for lack of jurisdiction.

14 **III.   SUMMARY JUDGMENT MOTION**

15 　　　**A.   LEGAL STANDARD**

16 　　　Summary judgment is appropriate when "there is no genuine dispute as to any
17 material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).
18 A party asserting that a fact cannot be or is genuinely disputed must support that assertion
19 by "citing to particular parts of materials in the record," including depositions, affidavits,
20 interrogatory answers or other materials, or by "showing that materials cited do not establish
21 the absence or presence of a genuine dispute, or that an adverse party cannot produce
22 admissible evidence to support the fact." *Id.* 56(c)(1). Thus, summary judgment is mandated
23 "against a party who fails to make a showing sufficient to establish the existence of an
24 element essential to that party's case, and on which that party will bear the burden of proof
25 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

26 　　　Initially, the movant bears the burden of pointing out to the Court the basis for the
27 motion and the elements of the causes of action upon which the non-movant will be unable
28 to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-

1 movant to establish the existence of material fact. *Id.* The non-movant "must do more than
2 simply show that there is some metaphysical doubt as to the material facts" by "com[ing]
3 forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec.*
4 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e)
5 (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a
6 reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,*
7 *Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are
8 insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.*
9 at 247–48.

### B. STATUTORY FRAMEWORK

The Internal Revenue Code (the "Code") requires employers to withhold Federal Income Contributions Act ("FICA") and federal income taxes from employees' wages and then remit the amounts withheld to the IRS. 26 U.S.C. §§3101, 3401; *see also United States v. Energy Res.*, 495 U.S. 545, 546-47 (1993). The employer collects these sums each pay period and must pay over the amounts to the United States on at least a quarterly basis. 26 U.S.C. §§31.6011(a)-1; 31.6011(a)-4; 31.6151-1(a). The amounts withheld are held in trust for the United States. 26 U.S.C. §7501. People therefore commonly refer to these taxes as "trust fund" taxes. *Energy Res.*, 495 U.S. at 546-47.

To ensure compliance with the trust fund tax requirements and to curb misappropriation of funds held in trust for the United States, Congress enacted section 6672 of the Code, which imposes personal liability for corporate taxes. *U.S. v. Pepperman*, 976 F.2d 123, 126 (9th Cir. 1992). Section §6672 provides in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax or truthfully account for and pay over such tax . . . shall . .. be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over . . .

26 U.S.C. §6672(a). Although §6672 imposes a "penalty," the liability imposed by that section is not penal in nature, but rather ensures that withholding taxes are paid. *Pepperman*,

- 7 -

1. 976 F.2d at 126.

Section 6672 does not impose liability upon the employer for the taxes collected from the employees. *Pacific Nat. Ins. Co. v. U.S.*, 422 F.2d 26, 30 (9th Cir. 1970). That liability is imposed by other sections. *Id.* Section 6672 imposes a "liability separate and distinct from the employer's liability for the withheld taxes, and it imposes that liability upon persons other than the employer." *Id.* Thus, the IRS need not attempt to collect the withholding taxes from the employer before attempting to collect from the responsible person. *Pepperman*, 976 F.2d at 127. And once liability is assessed under §6672, a lien arises in favor of the Government against "all property and rights to property" belonging to the assessed person. 26 U.S.C. §6321.

### C. ANALYSIS AND CONCLUSION

Courts have developed a two-pronged analysis for determining liability under 26 U.S.C. §6672. Courts first decide whether a person was responsible for collecting and remitting trust fund taxes to the Government. *Davis v. U.S.*, 961 F.2d 867, 869-70 (9th Cir. 1992). They then determine whether the person acted willfully in failing to collect or pay over the withheld taxes. *Id.*

#### 1. Persons Responsible

Courts have held that "persons" who are "responsible" for paying over withholding taxes pursuant to §6672 are those who "had the final word as to what bills should or should not be paid, and when." *Purcell v. U.S.*, 1 F.3d 932, 936 (9th Cir. 1993)(internal citations omitted). Personal responsibility is a matter of "status, duty, and authority." *Id.* at 937 (internal citations omitted). Authority depends on the scope and nature of an individual's power to determine how the company directs its financial affairs; "the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." *Id.* (citing *Raba v. U.S.*, 977 F.2d 941, 943 (5th Cir. 1992)("The crucial examination is whether a person had the 'effective power to pay taxes.'")(citation omitted); *Bowlen v. U.S.,* 956 F.2d 723, 728 (7th Cir. 1992)("the key to liability under section 6672 is the power to control the decision-making process by which the employer corporation allocates funds")).

- 8 -

Even if an individual's day-to-day function in a company is not connected to financial decision making or tax matters, that individual can be personally liable under §6627 if he or she has the authority to pay or to order the payment of delinquent taxes. *Purcell*, 1 F.3d at 937. The individual is statutorily responsible if he "had the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact." *Id.* Individuals therefore cannot escape liability by delegating oversight of a company's finances and tax matters to another. *Id.* Liability attaches to all individuals responsible for withholding and paying over trust fund taxes. *Id.*

As Secretary/Treasurer of MDH, Plaintiff had the authority to direct its financial affairs. She had access to MDH's checking accounts and in fact wrote checks on those accounts for payroll and to pay creditors. Plaintiff also was in charge of delivering MDH's books, payroll, and contracts to Budd Accounting, and she regularly met with Evelyn Budd to collect payroll and business records. Moreover, while her daughter was in prison, Plaintiff had unilateral control over all aspects of MDH.

The Court finds, based on the facts deemed admitted, that Plaintiff was a person responsible for collecting and remitting MDH's trust fund taxes for the tax periods relevant here. The Court could have reached this conclusion even without considering the summary judgment evidence submitted by the Government because Plaintiff's failure to respond to the requests for admission and subsequent failure to seek the withdrawal of those admissions conclusively established that "[d]uring the periods at issue in this case, Plaintiff had a duty to collect, account, and pay over the federal income and social security taxes from the wages of the employees of MDH, as required by 26 U.S.C. §§3102(a), 3402(a)." (Doc. 32-11.)

**2. Willfulness**

The Court now must determine whether Plaintiff willfully failed to collect or pay over the withheld taxes. Courts have construed the term "willfulness" for §6672(a) purposes as a "voluntary, conscious and intentional act to prefer other creditors over the United States." *Phillips v. U.S.*, 73 F.3d 939, 942 (9th Cir. 1996). "No bad motive need be proved, and conduct motivated by reasonable cause, such as meeting the payroll, may be 'willful.'" *Id.*

- 9 -

1  (citing *Davis*, 961 F.2d at 871). Nor does the individual have to have actual knowledge of
2  a failure to remit the employment taxes; reckless disregard as to the paying over of the taxes
3  may suffice. *Id.*

4  Plaintiff made payments to business creditors other than the United States while the
5  trust fund taxes remained unpaid. (SOF ¶34.) Plaintiff testified that she "knew the [MDH]
6  taxes weren't taken care of, but that wasn't my problem." (Doc. 32-9; 51:19-20.) Plaintiff's
7  mistaken belief that she was not responsible for paying over the trust fund taxes does not
8  make her failure to pay nonwillful. *See Jones v. U.S.*, 60 F.3d 584, 589 (9th Cir. 1995)("A
9  mistaken belief on the part of the responsible person that the tax need not or cannot be paid
10 over does not suffice to render the failure to pay nonwillful.")(internal citation omitted).
11 Further, per her admission, Plaintiff "willfully failed to collect the federal income and social
12 security taxes from the wages of the employees of MDH, as required by 26 U.S.C.
13 §§3102(a), 3402(a), or willfully attempted in any manner to evade or defeat such tax." (Doc.
14 32-11.) The Court therefore finds that Plaintiff willfully failed to collect or pay over MDH's
15 withheld taxes.

16 Because Plaintiff was a person responsible during the relevant tax periods for
17 collecting and remitting MDH's trust fund taxes to the Government and willfully failed to
18 do so, the Court will grant the Government's Motion for Summary Judgment. The Court
19 grants summary judgment to the Government on Plaintiff's claims for a refund and
20 abatement. The Court also grants summary judgment to the Government on its counter-claim
21 for unpaid trust taxes. The Court finds that the Government has demonstrated sufficiently
22 that as of December 31, 2010, Plaintiff owed $43,197.39 in unpaid §6672 penalties and
23 interest. That amount will continue to accrue interest until Plaintiff pays the penalties in full.
24 Accordingly,

25 **IT IS ORDERED** DISMISSING Plaintiff's §7433 damages claim for lack of
26 jurisdiction.

27 **IT IS FURTHER ORDERED** GRANTING summary judgment (Doc. 32) to the
28 United States of America on all of Plaintiff's remaining claims.

1    **IT IS FURTHER ORDERED** GRANTING summary judgment (Doc. 32) to the
2  United States of America on its counter-claim in the amount of $43,197.39 plus interest at
3  the applicable rate until the amount of this judgment is paid in full.
4    DATED this 30th day of June, 2011.

*[Signature]*
James A. Teilborg
United States District Judge